# In the United States Court of Federal Claims

No. 10-861C
(Filed: September 21, 2011)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
| **EFRAIN E. FUENTES,** | * | |
| | * | |
| Plaintiff, | * | Military Pay Act; 37 U.S.C. § 204; |
| | * | Tucker Act; 28 U.S.C. § 1491; |
| v. | * | RCFC 12(b)(1); wrongful separation from |
| | * | active duty; incapacitation pay; |
| **THE UNITED STATES,** | * | Application to Proceed *In Forma Pauperis*; |
| | * | 28 U.S.C. § 1915 |
| Defendant. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Jason E. Perry*, Cheshire, CT, for Plaintiff.

*Jane C. Dempsey*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for Defendant.

## OPINION AND ORDER

On December 14, 2010, Plaintiff Efrain Fuentes filed a Complaint alleging that he is entitled to back pay because the United States Army improperly separated him from active duty while he was injured. Plaintiff alleges that his injury left him disabled, and therefore, Army regulations required the Army to refer him to a medical board before it separated him from active duty. Even though he was separated because his term of active duty ended, Plaintiff asserts that he was entitled to remain on active duty past his term's end date pending completion of a proper disability evaluation by a medical board. Plaintiff claims that, under the Military Pay Act, 37 U.S.C. § 204 (2006), he is entitled to active duty pay for the period of his wrongful discharge.

On April 15, 2011, the Government filed a Motion to Dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"). The Government characterizes Plaintiff's claim as one for disability retirement pay, rather than back pay, and asserts that a service member's claim for disability pay does not accrue until a military board has acted on the claim. Therefore, the Government argues, this Court does not have jurisdiction over Plaintiff's claim.

The main issue in this case is the proper interpretation of Plaintiff's claim for relief. The Court finds that Plaintiff has properly asserted a claim for back pay due to wrongful separation from active duty. Because a claim for military back pay accrues when a service member is denied the pay to which he claims he is entitled, and not when a military board acts on his claim,

this Court has jurisdiction over Plaintiff's claim.  Accordingly, the Government's motion to dismiss is **DENIED**.

Plaintiff also filed an Application to Proceed *In Forma Pauperis* ("IFP").  Plaintiff has established that payment of the filing fees would constitute a serious hardship on him, and therefore his IFP application is **GRANTED**.

I. Background

Plaintiff was an infantryman in the Indiana Army National Guard.  On June 20, 2005, the Army ordered Plaintiff to active duty in Iraq for a 10 month term.  Compl. ¶7.  Plaintiff was deployed in November 2005, and he was assigned to duty as a mechanic in a maintenance unit.  Compl. ¶8.  In February 2006, Plaintiff began to experience back pain while moving equipment.  Compl. ¶9.  After a medical evaluation, Plaintiff was returned to duty but with work limitations.  *Id.*  Plaintiff's back pain continued to increased, and on July 4, 2006, an Army doctor recommended Plaintiff for redeployment because Plaintiff was "not physically fit for deployment or to be retained in the military due to his multiple medical conditions that prevent him from performing even the most basic soldier duties."  Pl.'s Ex. 3.  On July 30, 2006, Plaintiff was redeployed out of theater to Fort Sill, Oklahoma.  Pl.'s Ex. 4.

On August 1, 2006, Plaintiff underwent another medical evaluation.  The doctor assessed Plaintiff with myalgia and myositis, lower back pain, and headaches.  Def.'s Ex. 5 at A13.  The doctor assigned Plaintiff a temporary profile[1] and did not recommend further evaluation by a medical evaluation board ("MEB" or "MEBD") or physical evaluation board ("PEB").[2]  *Id.* at A12-A13.  Under "Disposition," the doctor released Plaintiff with "Work/Duty Limitations."  *Id.* at A13.  The doctor commented that Plaintiff had "fibromyalgia by [history], however he did well in past and with treatment and rehab may do well and not require MEB."  *Id.*  Based on the August 1, 2006 medical evaluation, the Army determined that Plaintiff's injury was incurred in the line of duty.  Pl.'s Ex. 2.

Plaintiff was not referred to a medical or disability board.  On September 13, 2006, Plaintiff was separated from active duty because his 10 month term ended.  Def.'s Ex. 7 at A19.  Plaintiff returned to inactive service with the Indiana Army National Guard.  Four years later, on December 14, 2010, Plaintiff filed this suit.

---

[1] The Army will assign a soldier a temporary profile, as opposed to a permanent profile, if "the condition is considered temporary, the correction or treatment of the condition is medically advisable, and correction usually will result in a higher physical capacity."  Army Regulation ("AR") 40-501 ¶7-4 (2006); Def.'s Ex. 6 at A18.

[2] Army regulations abbreviate "medical evaluation board" as both MEB and MEBD.  *See* AR 40-501 ¶2-2 (MEB); AR 635-40 ¶2-8 (2006) (MEBD).  An MEB is "convened to document a Soldier's medical status and duty limitations insofar as duty is affected by the Soldier's status.  A decision is made as to the Soldier's medical qualification for retention based on the criteria in AR 40-501, chapter 3.  If the MEBD determines the Soldier does not meet retention standards, the board will recommend referral of the Soldier to a PEB."  AR 635-40 ¶4-10.  "The PEBs are established to evaluate all cases of physical disability equitably for the Soldier and the Army."  AR 635-40 ¶4-17.

## II.     The Government's Motion to Dismiss

On April 15, 2011, the Government filed a Motion to Dismiss Plaintiff's Complaint for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). According to the Government's interpretation of the Complaint, Plaintiff actually is advancing a claim for disability retirement pay.[3] Def.'s Mot. at 2. The Government argues that Plaintiff has not been processed by the disability evaluation system, and this court does not have jurisdiction over disability claims until a military board evaluates a service member's entitlement to disability retirement in the first instance. Therefore, Plaintiff's disability claim is premature.

On May 16, 2011, Plaintiff filed a Response. Plaintiff contends that this Court has jurisdiction under the Military Pay Act. Pl.'s Resp. at 5. Plaintiff states that he was wrongfully discharged from active duty with the United States Army because, as an active reservist injured in the line of duty, he was entitled to remain on active duty while he was processed through the disability system. He claims entitlement to back pay for the period of his wrongful discharge from active duty. Because he did not receive a full medical evaluation of his injuries prior to separation from active duty, Plaintiff argues he was wrongfully discharged from active duty and is entitled to back pay for lost active duty pay. *Id.*

The Government filed a Reply on June 10, 2011. In reply, the Government continues to construe Plaintiff's claim as one for disability pay and argues that Plaintiff "impermissibly requests the Court to make a determination that he failed retention standards without an existing military disability evaluation." Def.'s Reply at 2. The Government claims that the Army decided not to refer Plaintiff to a MEB, and that until a military board has made an actual disability determination, this Court does not have jurisdiction over the Army's referral decision. *Id.* The Government also argues that jurisdiction is premature because Plaintiff has failed to exhaust his administrative remedies. *Id.* at 2-3.

### A.     Standard of Review

A plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question, it [is] incumbent upon [the plaintiff] to come forward with evidence establishing the court's jurisdiction"). When deciding a motion to dismiss pursuant to RCFC 12(b)(1), the Court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in [the] plaintiff's favor." *Heinke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995); *see Folden v. United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004).

---

[3] The Government also argues that Plaintiff has claimed he was unlawfully discharged from a state National Guard, and this court does not have jurisdiction over a state law claim. Def.'s Mot. at 3. Plaintiff expressly disclaims that his action is based on the allegation that he was wrongfully discharged from the state National Guard. Pl.'s Resp. at 2 n.1, 5 n.5.

If subject matter jurisdiction is challenged, the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. *See McNutt v. Gen. Motors. Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Reynolds*, 846 F.2d at 747-48. When ruling on a motion to dismiss for lack of subject matter jurisdiction, a court may consider evidence and resolve factual disputes over the jurisdictional facts. *Reynolds*, 846 F.2d at 747; *see also Rocovich v. United States*, 933, F.2d 991, 994 (Fed. Cir. 1991); *Int'l Mgmt. Servs., Inc. v. United States*, 80 Fed. Cl. 1, 2 n.2 (2007).

In their briefing on the Government's motion to dismiss, both parties have filed exhibits to support their respective positions. The Court considers these exhibits in determining whether jurisdiction is proper.

### B.     Subject Matter Jurisdiction

Whether a court possesses jurisdiction is a threshold matter in every case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). "Subject-matter jurisdiction may be challenged at any time by the parties or by the court *sua sponte*." *Folden*, 379 F.3d at 1354; *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). Plaintiff alleges that he is entitled to back pay under the Military Pay Act, and that this Court has jurisdiction over his claim pursuant to the Tucker Act, 28 U.S.C. § 1491 (2006). Compl. ¶2.

The Tucker Act grants this Court jurisdiction over monetary actions "against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." § 1491(a)(1). The Tucker Act is only a jurisdictional statute and does not create any independent substantive rights enforceable against the United States for money damages. *See, e.g.*, *United States v. Mitchell*, 463 U.S. 206, 216 (1983); *United States v. Testan*, 424 U.S. 392, 398 (1976) ("[T]he [Tucker] Act merely confers jurisdiction upon [this Court] whenever the substantive right exists").

The main issues in this case are the nature of Plaintiff's claim and under which statute he is requesting relief. According to the Federal Circuit, a service member who is injured in the line of duty may claim entitlement to two different types of pay: "incapacitation pay – active duty pay during a period of physical incapacitation – and also . . . disability payments, including disability retirement, if the disability is permanent." *Barnick v. United States*, 591 F.3d 1372, 1374-1375 (Fed. Cir. 2010). Plaintiff characterizes his claim as one for back pay for improperly denied incapacitation pay. A claim for back pay arises under the Military Pay Act, 37 U.S.C. § 204. The Government characterizes the claim as one for disability retirement pay. Claims for disability retirement arise under 10 U.S.C. § 1201.

### C.     Discussion

Disability retirement pay claims and back pay claims are based on different money-mandating statutes and have different jurisdictional predicates. *Chambers v. United States*, 417 F.3d 1218, 1224 (Fed. Cir. 2005). A claim accrues, for purposes of the Tucker Act, "as soon as all events have occurred that are necessary to enable the plaintiff to bring suit." *Martinez v.*

4

*United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (*en banc*).  "Because the Tucker Act does not require exhaustion of administrative remedies, a plaintiff's invocation of . . . a permissive remedy neither prevents the accrual of his cause of action nor tolls the statute of limitations." *Chambers*, 417 F.3d at 1224.

      To properly invoke this Court's jurisdiction, Plaintiff must satisfy all the jurisdictional predicates of the Military Pay Act.  The Military Pay Act entitles an individual who was unlawfully discharged to recover "money in the form of the pay that the plaintiff would have received but for the unlawful discharge." *Martinez*, 333 F.3d at 1303.  A military pay claim accrues on "the date on which the service member was denied the pay to which he claims entitlement." *Id.* at 1314.  Consequently, an action for back pay under the Military Pay Act accrues at the time of a plaintiff's discharge or separation from active duty. *Id.* at 1310.  A plaintiff's use of permissive administrative remedies, such as an appeal to a corrections board, is not a prerequisite to this Court's jurisdiction over military pay claims, and it does not toll the statute of limitations. *Id.*

      The subsection of the Military Pay Act that addresses injured active duty reservists, such as Plaintiff, reads as follows:

> A member of a reserve component of a uniformed service is entitled to the pay and allowances provided by law or regulation for a member of a regular component of a uniformed service of corresponding grade and length of service whenever such member is physically disabled as the result of an injury, illness, or disease incurred or aggravated . . . in the line of duty while performing active duty . . . .

37 U.S.C. § 204(g)(1).  The statute limits incapacitation pay for reservists to a period of six months, unless the Secretary determines "that it is in the interests of fairness and equity" to extend the period. § 204(i)(2); *see Barnick*, 591 F.3d at 1378.  Any "incapacitation pay beyond the initial six-month period is wholly within the Secretary's discretion," and this Court lacks jurisdiction over claims where the government has complete discretion over the decision to pay an individual. *Barnick*, 591 F.3d at 1378 (finding that the Court of Federal Claims did not have jurisdiction over a claim for incapacitation pay beyond the 6 month period under § 204(i)(2)).

      Plaintiff claims that he is entitled to back pay because the Army wrongfully separated him from active duty while he was injured, and had the Army properly processed him, he would have remained on active duty for continued treatment or until a MEB acted on his case.  Plaintiff asserts that the Military Pay Act entitles him to recover active duty pay for the period of his wrongful discharge. Pl.'s Resp. at 5.  Plaintiff asserts that medical evaluation and processing take precedence over administrative separation, and pursuant to Army Regulation 635-200, the Army was required to refer him to a MEB because he failed retention standards at the time of his separation.[4]  Pl.'s Resp. at 4-5.

---

[4] Plaintiff does not dispute, however, that he was separated from active duty because he had completed the period for which he had been ordered to active duty. Pl.'s Resp. at 5; *see* Def.'s Ex. 7 at A19.

The Army's regulations set forth the processes for separating a reservist who is on active duty and was injured in the line of duty. Paragraph 4-2 of AR 635-200 (2005), Def.'s Ex. 8 at A21, provides "Personnel who are physically unfit for retention (see AR 40-501, chap 3) but who were accepted for, or continued in, military service per AR 635-40, will not be separated because of [Expiration of Term of Service] unless processing for separation because of physical disability is waived."[5] Paragraph 3-7 of AR 635-40 provides that

> A Soldier whose normal scheduled date of . . . separation occurs during the course of hospitalization or disability evaluation may, with his or her consent, be retained in the service until he or she has attained maximum hospital benefits and completion of disability evaluation if otherwise eligible for referral into the disability evaluation system. . . .
> . . .
> *d.* Reserve Component Soldiers serving on [Active Guard Reserve] status will be retained on active duty as prescribed in AR 635-200.

Plaintiff contends that, at the time of his separation, he was injured and unfit for duty. Plaintiff has supported his claims with evidence and he does not rely on allegations alone. *See, e.g.*, Pl.'s Exs. 3, 4 (documentation showing Plaintiff was redeployed out of theater because he was found unfit for deployment and his injury prevented him from performing his duties). Plaintiff contends that he was entitled to stay on active duty and to continue receiving incapacitation pay while he was processed through the disability system.

It is undisputed that § 204(g)(1) entitles an active reservist who is injured and disabled in the line of duty to receive active duty pay, in the form of incapacitation pay, until he is released from active duty. *See Barnick*, 591 F.3d at 1377-78. Further, pursuant to the Army's regulations, it appears that, if Plaintiff was unfit for retention due to an injury sustained in the line of duty, he should not have been discharged from active duty until he was processed for his physical disability. Thus, if Plaintiff can show that the Army's decision not to refer him to a MEB was arbitrary or that its actions in discharging him from active duty were contrary to law, Plaintiff may be able to show that he was wrongfully discharged and that he is entitled to back pay. While it is not clear if Plaintiff ultimately will be successful in his claim, he has, based on the record before this Court, alleged a viable cause of action and has properly invoked this Court's jurisdiction.

The Government's arguments to the contrary are unconvincing. The Government argues that this Court lacks jurisdiction to hear Plaintiff's claim because, without a disability determination by a proper military board, this Court cannot on its own make a determination that Plaintiff failed Army retention standards and required referral to a MEB. Def.'s Reply at 2. The Government further argues that, despite Plaintiff's attempts to characterize his separation from active duty as a wrongful discharge claim, Plaintiff is, in fact, advancing a disability claim.

---

[5] Plaintiff was diagnosed with fibromyalgia. Paragraph 3-41 of AR 40-501 provides "The causes for referral to an MEB are as follows: . . . d. *Fibromyalgia.* When severe enough to prevent successful performance of duty. Diagnosis will include evaluation by a rheumatologist."

Def.'s Reply at 2. The Government argues that no cause of action can arise in a disability case until a soldier has exhausted his administrative remedies and the proper board has acted or declined to Act.

The problem with the Government's position is that it is based on the statute and rules that govern disability claims. Under 10 U.S.C. § 1201, which provides the substantive right to disability retirement pay, the Secretary and the military boards are given the authority to determine whether a service member is entitled to disability retirement pay. *Chambers*, 417 F.3d at 1224. Therefore, unlike claims for back pay following an unlawful discharge, "claims of entitlement to disability retirement pay generally do not accrue until the appropriate military board either finally denies such a claim or refuses to hear it." *Id.* This Court can review the military's decision on disability retirement pay, but it cannot make the decision in the first instance. *Id.* at 1224-25; *see Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983) ("[R]esponsibility for determining who is fit or unfit to service in the armed services is not a judicial province; . . . courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence."); *Lockwood v. United States*, 90 Fed. Cl. 210, 218-19 (2008).

Plaintiff appears to agree that this Court does not have jurisdiction to consider disability retirement claims until the proper military board evaluates a service member's entitlement to disability payments or disability retirement. Plaintiff states that he "is well aware of the jurisdictional predicates for raising [physical disability] claims and does not make them at this time." Pl.'s Resp. at 2 n.2. Plaintiff stresses that he is requesting "active duty pay for the period of his wrongful discharge" and not disability pay. *Id.* at 5.

In sum, while jurisdiction over a claim for disability retirement pay would be premature, Plaintiff has established all the jurisdictional predicates for a claim for back pay under the Military Pay Act. Accordingly, the Government's Motion to Dismiss for lack of subject matter jurisdiction must be denied.

### III.   Application to Proceed *In Forma Pauperis*

Plaintiff filed an Application to Proceed *In Forma Pauperis*, requesting that the filing fee be waived. The United States Court of Federal Claims is authorized, pursuant to 28 U.S.C. § 1915(a)(1), to allow an indigent plaintiff to file a complaint without the payment of a filing fee, i.e., *in forma pauperis*. *See* 28 U.S.C. § 2503(d) (2006); s*ee also Pleasant-Bey v. United States*, No. 11-258C, -- Fed. Cl. --, 2011 WL 3087009 (Fed. Cl. July 26, 2011), *appeal docketed*, No. 2011-5118 (Fed. Cir. Aug. 11, 2011); *Hayes v. United States*, 71 Fed. Cl. 366, 368 (2006). In order to proceed *in forma pauperis*, an applicant must be "unable to pay such fees or give security therefor." § 1915(a)(1). An applicant must support a request with an affidavit that lists the applicant's assets, declares he is unable to pay such fee, and states the nature of the action, defense, or appeal and the affiant's belief that he is entitled to redress. *Id.*

The determination whether a plaintiff has met the requirements for proceeding *in forma pauperis* is left to the discretion of the presiding judge. *Waltner v. United States*, 93 Fed. Cl. 139, 142 (2010); *see Rowland v. Cal. Men's Colony*, 506 U.S. 194, 217-18 (1993). "[T]he

threshold for a motion to proceed *in forma pauperis* is not high . . . ." *Fiebelkorn v. United States*, 77 Fed. Cl. 59, 61-62 (2007). Section 1915(a)(1) requires that the applicant be "unable to pay such fees." 28 U.S.C. § 1915(a)(1). It is not necessary that the plaintiff be "absolutely destitute," but rather that the payment of the filing fee would constitute a "serious hardship." *Hayes*, 71 Fed. Cl. at 369.

Plaintiff represents that he is unemployed, and it appears that his only sources of income are Supplemental Security Income ("SSI"), "UA,"[6] and child support payments. Appl. Proceed *In Forma Pauperis*. Plaintiff also represents that his son is a dependent and states that he contributes $750.00[7] towards his son's support. *Id.* Plaintiff declares that he does not own any cash, real estate, stocks, bonds, notes, automobiles, or other valuable property, and that he does not have money in any checking or savings accounts. *Id.* Plaintiff avers, under penalty of perjury, that this information is true and correct.

The Court finds that paying the Court's filing fees would be a serious hardship for Plaintiff. Plaintiff receives less than $2,000 per month (less than $24,000 annually). Plaintiff contributes $750 to his dependent son ($9,000 annually). According to the United States Department of Health and Human Services, the 2010 poverty guideline for a family of one is $10,890, and for a family of two is $14,710. Annual Update of the HHS Poverty Guidelines, 76 Fed. Reg. 3637 (Jan. 20, 2011). Plaintiff's income is not significantly above poverty level. Additionally, Plaintiff qualifies for SSI, which is designed to help the aged, blind, or disabled who have little or no income.

Based on all the foregoing facts, the Court is persuaded that payment of the filing fees would constitute a serious hardship to Plaintiff. Accordingly, Plaintiff's Application to Proceed *In Forma Pauperis* is granted.

**IV.   Conclusion**

For the reasons set forth above, it is hereby ORDERED:

1. The Government's Motion to Dismiss for lack of subject matter jurisdiction is **DENIED**. The Government shall file an Answer **by Wednesday, October 19, 2011**.

2. Plaintiff's Motion to Proceed *In Forma Pauperis* is **GRANTED**.

s/ Edward J. Damich
EDWARD J. DAMICH
Judge

---

[6] For the purposes of evaluating Plaintiff's IFP Application, the Court assumes that "UA" stands for some sort of unemployment assistance program.

[7] The Court presumes that this amount is paid monthly.