# In the United States Court of Federal Claims

No. 10-861C
(Filed: August 14, 2012)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|                      |     |
|----------------------|-----|
| **EFRAIN E. FUENTES,** | \* |
|                      | \*  |
|                      | \*  |
| Plaintiff,           | \*  |
|                      | \*  |
| v.                   | \*  |
|                      | \*  |
| **THE UNITED STATES,** | \* |
|                      | \*  |
| Defendant.           | \*  |
|                      | \*  |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Jason E. Perry*, Cheshire, CT, for Plaintiff.

*Jane C. Dempsey*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, with whom was *Captain Rachel A. Landsee*, U.S. Army Litigation Division, Fort Belvoir, VA, for Defendant.

_____

**OPINION**

_____

**DAMICH**, Judge:

In this military pay case, Plaintiff Efrain Fuentes claims that he is entitled to back pay because the United States Army improperly separated him from active duty without first referring him for a disability evaluation. Plaintiff asserts that the Army was required to refer him to the disability evaluation system before separating him because, at the time his term of service ended, he did not meet medical retention standards. Plaintiff seeks to be placed back on active duty until a disability evaluation is complete, and he seeks active-duty pay under the Military Pay Act, 37 U.S.C. § 204 (2006), for the period of his wrongful discharge.

The parties have filed cross-motions for judgment on the administrative record. Plaintiff argues that that Army violated its regulations by not referring him to the disability evaluation system when his unit's doctor and commanding officer had found he failed retention standards and redeployed him out of theater. In the alternative, he argues that the Army failed to give proper consideration to the opinions of his unit's doctor and his commanding officer when it

determined that he met retention standards and separated him from active duty.  The Government argues that, although one doctor found that Plaintiff failed retention standards, multiple other doctors felt that Plaintiff met the standards and was fit for duty.  The Government argues that the Army did not violate any regulations, that the Army's decision was supported by substantial evidence, and that this Court must defer to the Army's determination of whether a soldier satisfies retention standards.

Because the Court finds that the Army did not violate any of its regulations and that deference is owed to the Army's determination that Plaintiff met retention standards, the Court grants the Government's motion for judgment on the administrative record and denies Plaintiff's cross-motion.

## I.  Background

### A.  Facts

Additional facts are set out in this Court's earlier decisions.  *Fuentes v. United States*, 100 Fed. Cl. 85 (2011) (denying the Government's motion to dismiss for lack of jurisdiction); Order, May 11, 2012 (granting Plaintiff's motion to supplement the administrative record).  The relevant facts are as follows.

Plaintiff was an infantryman in the Louisiana Army National Guard.  On June 20, 2005, the Army ordered Plaintiff to active duty in Iraq for a 10-month term, and he was assigned to duty as a mechanic in a maintenance unit.  Admin. Rec. 449.  Plaintiff deployed to Iraq on November 14, 2005.  Plaintiff redeployed back to the United States on July 30, 2006, almost 2 months early, because his commanding officer felt his medical condition rendered him unfit for duty.

Throughout his deployment, Plaintiff had sought and received medical treatment on numerous occasions.  Most of his visits were with his primary care manager, Dr. Alison Celis, and his neurologist, Dr. Aixa Espinosa, to manage pain associated with his fibromyalgia, headaches, and lower back problems.  The other visits were with several specialists.  Plaintiff first sought treatment from Dr. Celis on December 27, 2005, for headaches and dizziness.  *Id.* at 100.

According to Plaintiff, he began to experience back pain on February 1, 2006, while he was moving some equipment.  Compl. ¶9.  On February 5, 2006, Plaintiff had surgery for a hernia.  Admin. Rec. 90, 97.  On February 21, 2006, Plaintiff was placed on a one month, temporary profile with work duty limitations.[1]  *Id.* at 97.  On February 24, 2006, Plaintiff saw Dr. Celis and reported a concern about a relapse of his fibromyalgia, a condition which predated his deployment.  *Id.* at 90-92.  On February 27, 2006, Plaintiff saw Dr. Espinosa for his fibromyalgia and headaches.  *Id.* at 90.

---

[1] The Army will assign a soldier a temporary profile, as opposed to a permanent profile, if "the condition is considered temporary, the correction or treatment of the condition is medically advisable, and correction usually will result in a higher physical capacity."  Army Reg. 40-501 ¶7-4 (June 27, 2006).

Plaintiff saw Drs. Celis and Espinosa multiple times in April and May 2006. In early May 2006, Dr. Celis sent Plaintiff to Kuwait for an MRI and an evaluation of Plaintiff's lower back pain. On May 10, 2006, Plaintiff was evaluated in Kuwait by Dr. John Locke, who noted that Plaintiff had multiple spinal disc bulges but no nerve impingement. *Id.* at 61. Dr. Locke released Plaintiff with a temporary profile but found that he was healthy and suitable to remain deployed. *Id.* at 60. Plaintiff continued to see Drs. Celis and Espinosa throughout May and June. In June, Plaintiff also saw Dr. Jeffery Parker at a pain management clinic. *Id.* at 40-41. Dr. Parker released Plaintiff without limitations. *Id.* at 39.

On July 4, 2006, Dr. Jeffrey K. Hubert, the brigade surgeon for Plaintiff's unit, documented that he thought that Plaintiff was "not physically fit for deployment." Dr. Hubert wrote that:

> [] This soldier is not physically fit for deployment or to be retained in the military due to his multiple medical conditions that prevent him from performing even the most basic soldier duties. The Fibromyalgia and degenerative disc disease predate his deployment and their severity precludes him from realistically serving in the military in any capacity.
>
> [] I recommend redeploying this soldier as soon as possible and separation from the Armed Services due to his failure to meet retention criteria as described in AR 40-501 3-41(d) Fibromyalgia; 3-30(j) Headaches; 3-39(h) Degenerative disc disease. Continued service in the military will only exacerbate these conditions and contribute to a rapid decline in his overall health.

*Id.* at 26. On July 27, 2006, Plaintiff's battalion commander requested to redeploy Plaintiff back to the United States. Pl.'s Ex. 4. On July 28, 2006, Plaintiff's brigade commander, Colonel Jeffery Colt, authorized redeployment because Plaintiff "is not physically fit for deployment or to be retained in the military due to his multiple medical conditions that prevent him from performing even the most basic Soldier duties." *Id.*[2]

On July 30, 2006, Plaintiff was redeployed out of theater to Reynolds Army Community Hospital in Fort Sill, Oklahoma. *See* Admin. Rec. 19-24. Plaintiff's medical holdover paperwork described him as needing "possible Board process" for his fibromyalgia and lower back pain, but that determination was made "pending review with Dr. [Larry] Bell." *Id.* at 24.

On August 1, 2006, Plaintiff was evaluated by Dr. Larry Bell.[3] *Id.* at 19. At the evaluation, Dr. Bell reviewed Plaintiff's medical history and talked to Plaintiff about his deployment and redeployment. *Id.* Dr. Bell assessed Plaintiff with myalgia and myositis, lower

---

[2] These two memoranda were not contained in the administrative record filed by the Government. On May 11, 2012, the Court granted Plaintiff's motion to supplement the administrative record with these two documents.

[3] Based on the August 1, 2006 medical evaluation, the Army determined that Plaintiff's injury was incurred in the line of duty. Admin. Rec. 13-14.

back pain, and headaches.  *Id.* at 20.  Dr. Bell released Plaintiff with work duty limitations and a temporary profile.  *Id.*  Dr. Bell did not recommend further evaluation by a Medical Evaluation Board ("MEB"), which is the first step of the disability evaluation process.  *Id.*  The doctor commented that Plaintiff had "fibromyalgia by [history], however he did well in past[,] and with treatment and rehab may do well and not require MEB."  *Id.* at 19.  Dr. Bell also commented that he "[d]iscussed with soldier at length.  Will REFRAD [release from active duty] with temp[orary] profile, soldier agrees."  *Id.* at 20.  Dr. Bell evaluated Plaintiff again on August 15, 2006.  He released Plaintiff without limitations.  *Id.* at 6-8.  Dr. Bell did not recommend that Plaintiff undergo an MEB, and Plaintiff was not referred to a medical or disability board.

On September 13, 2006, Plaintiff was administratively separated from active duty because his 10-month term ended.  *Id.* at 416.  Plaintiff returned to inactive service with the Indiana Army National Guard.[4]

## B.    Procedural History

On December 14, 2010, the Plaintiff filed this suit.  Plaintiff asserted he was entitled to an MEB before being separated and requested that he be restored to active duty for disability evaluation and that he be awarded back pay for the period of his wrongful discharge.  On April 15, 2011, the Government filed a motion to dismiss for lack of subject matter jurisdiction.  The Government characterized Plaintiff's claim as one for disability retirement pay, rather than back pay, and asserted that a service member's claim for disability pay does not accrue until a military board has acted on the claim.  Plaintiff disagreed and stated that he was seeking only back pay and not disability pay.  He argued that he was wrongfully discharged from active duty because, as an active reservist injured in the line of duty, he was entitled to remain on active duty until he was processed through the disability system.

On September 21, 2011, this Court denied the Government's motion to dismiss, finding that Plaintiff had established the jurisdictional predicates for a back-pay claim under the Military Pay Act and the Tucker Act, 28 U.S.C. § 1491 (2006).  *See Fuentes*, 100 Fed. Cl. at 92.  On October 19, 2011, the Government filed the administrative record and a motion for judgment upon the administrative record.  On December 5, 2011, Plaintiff filed a response and a cross-motion for judgment on the administrative record.  On January 19, 2012, the Government filed a reply.  After the Government's reply, briefing was staying to allow Plaintiff to file a motion to supplement the administrative record.  On March 1, 2012, Plaintiff filed a motion to supplement the administrative record with two one-page letters from his battalion commander and brigade commander.  The Court granted the motion on May 11, 2012.  On June 1, 2012, Plaintiff filed his reply brief.

## II.    Legal Standards

### A.    Standard of Review

---

[4] While he was deployed, he transferred from the Louisiana National Guard to the Indiana National Guard.

Judicial review of military decisions "is only appropriate where the [military's] discretion is limited" and there are "tests and standards" against which the court can evaluate the military's conduct. *Murphy v. United States*, 993 F.2d 871, 873 (Fed. Cir. 1993). Where regulations provide standards and instructions for the exercise of an otherwise discretionary decision, the Court may review whether the Army complied with its own regulations. *Groves v. United States*, 47 F.3d 1140, 1145 (Fed. Cir. 1995). Even if "the *merits* of a decision [are] committed wholly to the discretion of the military," a Court still may address "a challenge to the particular *procedure* followed in rendering a military decision . . . ." *Adkins v. United States*, 68 F.3d 1317, 1323 (Fed. Cir. 1995) (emphasis in original); *see also Murphy*, 993 F.2d at 873-74 (stating that, although the Court could review procedural matters, "the merits of the [military's] decision to release [the plaintiff] from active duty are beyond judicial reach").

The Court will not disturb the military's decision unless it is "arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005). A court may set aside an agency's decision if the agency "'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or the decision is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Ala. Aircraft Indus., Inc. v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). However, "military administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs." *Dodson v. United States*, 988 F.2d 1199, 1204 (Fed. Cir. 1993).

Where the parties have filed cross-motions for judgment on the administrative record, as here, Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC") provides a procedure for parties to seek the equivalent of an expedited trial on a "paper record, allowing fact-finding by the trial court." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). Unlike summary judgment standards, genuine issues of material fact do not preclude a judgment on the administrative record. *See id.* at 1355-56. Questions of fact are resolved by reference to the administrative record. *Id.* at 1356.

## B.    The Process for Separating a Reservist from Active Duty

Although the "Secretary of the Army has broad discretion to release reserve officers from active duty," his discretion is limited by the Army's regulations. *Groves*, 47 F.3d at 1145. Administrative separations from active duty are governed by Army Regulation 635-200, Active Duty Enlisted Administrative Separations (June 6, 2005). Pursuant to the regulation, the Army may not separate a reservist or a National Guard member[5] from active duty because his term of service has ended if the reservist is entitled to be processed through the disability system. Army Reg. 635-200 ¶4-2 (a soldier that is "physically unfit for retention . . . but who w[as] accepted for, or continued in, military service . . ., will not be separated because of [Expiration of Term of Service] unless processing for separation because of physical disability is waived"); *see also*

---

[5] When an inactive soldier, whether a member of the Army Reserve or the National Guard, is on active duty for a period exceeding 30 days, the soldier is considered an active-duty "reservist."

Army Reg. 635-40 ¶3-7 (Feb. 8, 2006) (an active reservist whose "normal scheduled date of . . . separation occurs during the course of . . . disability evaluation may . . . be retained in the service until . . . completion of disability evaluation if otherwise eligible for referral into the disability evaluation system. . . .").

Based on this regulation, Plaintiff claims that he was entitled to remain on active duty until he was processed through the disability system. He asserts that, in administratively separating him at the end of his term of service, the Army violated its own regulations because he was physically unfit for retention. Under the Military Pay Act, an individual who was unlawfully discharged may recover "money in the form of the pay that the plaintiff would have received but for the unlawful discharge." *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (*en banc*). Under the Act, active duty reservists injured in the line of duty are entitled to the pay and allowances of regular component soldiers while they remain on active duty. 37 U.S.C. § 204(g)(1). Therefore, Plaintiff requests to be placed back on active duty pending disability evaluation, and he seeks back pay for the period of his wrongful discharge.

## III.    Discussion

Plaintiff claims that the Army violated its regulations by failing to refer him to an MEB after it was found that he failed retention standards. In support of his claim, Plaintiff advances two arguments. First, Plaintiff argues that, because Dr. Hubert found that he failed retention standards, he was entitled to an MEB referral after he was redeployed. Second, Plaintiff argues that Dr. Bell acted arbitrarily, capriciously, and in violation of regulations when, contrary to Dr. Hubert's and Col. Colt's opinions, Dr. Bell found that Plaintiff was fit for duty. The Court addresses each argument in turn.

### A.    Did the Army Violate Its Regulations When It Failed to Refer Plaintiff to an MEB Due to His Medical Condition After It Redeployed Him?

Plaintiff argues that, once Dr. Hubert found that he failed retention standards, he immediately was entitled to an MEB referral. Plaintiff quotes Dr. Hubert's memorandum, in which Dr. Hubert wrote that "[t]his soldier is not physically fit for deployment or to be retained in the military due to his multiple medical conditions" and he "recommend[ed] redeploying this soldier as soon as possible and separation from the Armed Services due to his failure to meet retention criteria . . . ." Admin. Rec. 26. Plaintiff asserts that Dr. Hubert's opinion is supported by the statements of Col. Colt, who redeployed Plaintiff back to the United States because Plaintiff was "not physically fit for deployment or to be retained in the military due to his multiple medical conditions that prevent him from performing even the most basic Soldier duties." Pl.'s Ex. 4. Therefore, Plaintiff argues, the Army violated its regulations when Dr. Bell reevaluated Plaintiff and declined to refer Plaintiff into the disability evaluation system.

The procedure for determining whether a soldier is fit for duty is set forth in Army Regulation 635-40, Physical Evaluation for Retention, Retirement, or Separation. This regulation provides that if a soldier's unit commander believes that he is unable to perform his duties, the commander should refer the soldier to a medical treatment facility ("MTF") for medical evaluation. Army Reg. 635-40 ¶2-9*c*. The referral for evaluation must be in writing and

it must "state the commander's reasons for believing that the Soldier is unable to perform his or her duties." *Id.* ¶4-8. A physician at the MTF will examine a soldier referred for evaluation, and "if it appears the Soldier is not medically qualified to perform duty, the MTF commander will refer the Soldier to a MEB." *Id.* ¶4-9. Army Regulation 40-400, which governs patient administration in MTFs, similarly provides that, if an MTF physician determines that a soldier does not meet retention standards, an MEB is mandatory. Army Reg. 40-400 ¶7-1 (Jan. 27, 2010). Although MTF commanders have the ultimate responsibility for evaluating the medical fitness of soldiers, the attending medical officer is responsible for initially evaluating the fitness of soldiers. *Id.* ¶5-2 (MTF commanders have the responsibility for determining the proper disposition of the soldier and attending medical officers are responsible to the MTF commander).

Thus, under the Army's regulatory scheme, if a soldier's unit commander believes that the soldier is unable to perform his duties, the commander should refer him to a MTF for medical evaluation. Army Reg. 635-40 ¶2-9*c*, ¶4-8. After a soldier is referred to the MTF, an MTF physician will examine the soldier, and "if it appears the Soldier is not medically qualified to perform duty, the MTF commander will refer the Soldier to a MEB." *Id.* ¶4-9. Therefore, the determination of whether a soldier's medical condition renders him unfit for duty is the responsibility of the evaluating physician at the MTF[6]; it is not the responsibility of the soldier's commanding officer or his brigade surgeon.

Here, Dr. Hubert, Plaintiff's brigade surgeon, and Col. Colt, his brigade commander, felt that Plaintiff was not fit for duty, and consequently, Col. Colt referred Plaintiff out of theater for evaluation at an MTF, Reynolds Army Community Hospital. As required by regulation, Col. Colt identified in a written memorandum the reasons he felt Plaintiff failed retention standards. At the MTF, Plaintiff was examined by Dr. Bell, who determined that Plaintiff met retention standards and that he did not require an MEB. Under the regulatory scheme, Dr. Hubert's and Col. Colt's duty was to refer Plaintiff to an MTF for evaluation and it was Dr. Bell's duty to determine whether Plaintiff failed medical retention standards. Accordingly, the Court finds that Dr. Hubert's and Col. Colt's opinions did not entitle Plaintiff to be referred into the disability evaluation system before being released from active duty.

**B.** **Did the Army Follow Its Regulations and Consider All the Relevant Evidence When It Determined that Plaintiff Met Retention Standards?**

Plaintiff also argues that Dr. Bell improperly decided that Plaintiff met retention standards, in violation of binding Army regulations. Plaintiff maintains that Dr. Bell erred by not giving proper consideration to Dr. Hubert's opinion. Dr. Hubert's letter identified specific medical conditions, and the corresponding provisions of Army Regulation 40-501, that caused Plaintiff to fail retention standards.

---

[6] The evaluating physician makes only an initial fitness determination to determine whether the soldier should be referred to an MEB. If the MEB findings support the conclusion that a soldier is permanently unfit for duty, the soldier is referred to a physical evaluation board ("PEB"). Only a PEB can make a formal fitness and disability determination for the Army. *See Barnick v. United States*, 591 F.3d 1372, 1375 (Fed. Cir. 2010).

Army Regulation 40-501, entitled Standards of Medical Fitness, provides to Army medical evaluators guidance on when a soldier should be referred to a MEB by setting forth the "[m]edical fitness standards for retention and separation." Army Reg. 40-501 ¶1-1. In his memorandum, Dr. Hubert cited to Army Regulation 40-501 paragraphs 3-41(d) Fibromyalgia; 3-30(j) Headaches; 3-39(h) Degenerative disc disease. Admin. Rec. 26. In relevant part, that regulation provides that the following conditions are "cause[] for referral to an MEB":

> "*Fibromyalgia.* When severe enough to prevent successful performance of duty. Diagnosis will include evaluation by a rheumatologist." Army Reg. 40-501 ¶3-41*d*.

> "Any other neurologic conditions . . . when after adequate treatment there remains residual symptoms and impairments such as persistent severe headaches . . . of such a degree as to significantly interfere with performance of duty." *Id.* ¶3-30*j*.

> "Nonradicular pain . . . secondary to degenerative disc . . . disease, that fails to respond to adequate conservative treatment and necessitates significant limitation of physical activity." *Id.* ¶3-39*h*.

Because Dr. Hubert found Plaintiff suffered from these conditions, which are "cause for referral to an MEB," Plaintiff argues that Dr. Bell acted arbitrarily and capriciously by concluding that Plaintiff was fit for duty.

Plaintiff also argues that Dr. Bell erred in not considering the memorandum[7] from his commanding officer that stated that Plaintiff was unfit for duty. Plaintiff cites to Army Regulation 40-501 ¶3-41, which provides that "[c]onditions and defects not mentioned elsewhere in this chapter are causes for referral to an MEB, if . . . [t]he conditions . . . result in interference with satisfactory performance of duty as substantiated by the individual's commander or supervisor." Army Reg. 40-501 ¶3-41*e*. When determining a whether a soldier is unfit for duty due to a physical disability, "evaluations of the performance of duty by supervisors (letters, efficiency reports, or personal testimony) may provide better evidence than a clinical estimate by the Soldier's physician describing the physical ability to perform the duties of the office, grade, rank, or rating." Army Reg. 635-40 ¶3-1*c*. "All relevant evidence must be considered in evaluating the fitness of a Soldier. Findings with respect to fitness or unfitness for military service will be made on the basis of the preponderance of the evidence." *Id.* Plaintiff therefore asserts that, had Dr. Bell properly considered Col. Colt's memorandum, Dr. Bell would have been required to refer Plaintiff to an MEB.

In response, the Government argues that the Army followed its regulations and that the regulations require MEB referral only when a soldier is no longer reasonably performing his duties. The Government does not deny that Dr. Hubert found Plaintiff did not meet retention standards, but argues that Dr. Hubert was the only doctor to reach that opinion. The Government

---

[7] As mentioned above, this memorandum was not contained in the administrative record filed by the Government. The Government had asserted that it was not included because it was not before Army decision makers.

notes that Dr. Celis and Dr. Espinosa frequently saw Plaintiff and both of them found that Plaintiff met retention standards.  It also cites to affidavits from soldiers in Plaintiff's unit in Iraq that indicate that Plaintiff was able to perform his duties despite his frequent medical complaints. *See* Admin. Rec. 321-29.  Finally, the Government cites to evidence that, after Plaintiff was separated, Plaintiff's performance evaluations as a member of the Indiana National Guard show that he was successful and fully capable.  *See id.* at 390.[8]

The Government also argues that Dr. Hubert's and Col. Colt's opinions were for the purpose of redeploying Plaintiff and not for the purpose of referring Plaintiff to an MEB.  The Government argues that Dr. Bell, who was the physician responsible for making a medical fitness evaluation, specifically considered the need for MEB evaluation before determining that it was not.  The Government asserts that Dr. Bell's decision should be given deference by this Court.

Under the standard of review, the Court's role is to determine whether Dr. Bell and the Army complied with all the relevant regulations when the decision to separate Plaintiff without referring him to an MEB was made; the Court's role is not to reweigh the evidence.

As explained above, as the evaluating physician at the MTF, it was Dr. Bell's responsibility to determine whether Plaintiff met medical retention standards and whether he should be referred to an MEB.  While Dr. Bell was to consider all relevant evidence, his decision was to be made based upon a preponderance of the evidence; nothing required Dr. Bell to adopt the opinion of Col. Colt or Dr. Hubert.

Dr. Bell evaluated Plaintiff on August 1, 2006.  The contemporaneous notes from his evaluation reflect that he reviewed Plaintiff's medical history and medical holdover paperwork. Admin. Rec. 19.  Dr. Bell knew that Plaintiff was redeployed due to fibromyalgia, lower back pain, and frequent headaches and that Plaintiff was referred to him for a possible board process. *Id.* at 19, 24.  He observed that Plaintiff had been placed on temporary profiles several times while deployed.  *Id.* at 19.  Thus, Dr. Bell was aware of all the relevant information about Plaintiff's medical condition and redeployment status.  Although Dr. Bell did not consider Col. Colt's memorandum, any error was harmless because Dr. Bell was aware of the relevant facts from the memorandum: that Plaintiff was redeployed for a possible board process because of his medical condition.

Dr. Bell conducted a physical examination of Plaintiff, and he considered Plaintiff's fibromyalgia, headaches, and degenerative disc disease, which were the three conditions identified by Dr. Hubert.  It was Dr. Bell's duty to assess Plaintiff's fitness and he was not bound by Dr. Hubert's opinion.  Based on his examination, Dr. Bell concluded that Plaintiff met retention standards.  Dr. Bell's notes reflect that he "discussed [the issues] with soldier at length" and that he told Plaintiff that Plaintiff would be "REFRAD [released from active duty] with

---

[8] Plaintiff was discharged from the Indiana National Guard in 2009.  On April 27, 2009, a military physician determined that Plaintiff should undergo an MEB.  Plaintiff failed to report for five medical appointments and to report for scheduled military training.  Admin. Rec. 359, 363-65.  Therefore, Plaintiff was separated from the Indiana National Guard.  *Id.* at 354.

temp[orary] profile, soldier agrees." Admin. Rec. 20. The Court notes that, although Dr. Bell's assessment differed from Dr. Hubert's, it was consistent with the assessments of Dr. Celis, Dr. Espinosa, and the other doctors that had evaluated Plaintiff while deployed.

The record shows that, after considering the relevant factors, Dr. Bell concluded that Plaintiff met retention standards and that no MEB referral should be made. His decision complied with all applicable regulations, and he acted in accordance with the proper procedures. The Court finds no basis for disturbing Dr. Bell's conclusion that Plaintiff met retention standards, and therefore, it finds that the Army acted properly when it released Plaintiff from active duty without referring him to an MEB.

In the absence of any procedural violations, Plaintiff's arguments amount to a challenge to the merits of the determination that he was fit for duty. Plaintiff essentially is arguing that Dr. Bell either misevaluated him or misweighed the relevant evidence. First, the reweighing of medical evidence is not the sort of determination that the Court is equipped to make. And second, it is well-settled that "responsibility for determining who is fit or unfit to service in the armed services is not a judicial province; . . . courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983)). "Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate [military] matters as the [military] must be scrupulous not to intervene in judicial matters." *Orloff v. Willoughby*, 345 U.S. 83, 93-94 (1953). Therefore, to the extent Plaintiff substantively challenges the Army's finding that Plaintiff satisfied retention standards, the Court finds that that is a nonjusticiable matter that is best left to the Army.

## IV. Conclusion

For the reasons set forth above, the Court **GRANTS** the Government's Motion for Judgment on the Administrative Record and it **DENIES** Plaintiff's Cross-Motion for Judgment on the Administrative Record.

The Clerk is directed to enter judgment accordingly.

s/ Edward J. Damich
EDWARD J. DAMICH
Judge